# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Murshed Ahmed, | No. CV-19-04926-PHX-SMB (ESW) |
| Petitioner, | |
| v. | **ORDER** |
| Fred Figueroa, et al., | |
| Respondents. | |

Petitioner Murshed Ahmed, who is detained in the CoreCivic Eloy Detention Center in Eloy, Arizona, has filed, through counsel, a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) and a Motion for Temporary Restraining Order (Doc. 2).

**I.     Background**

Petitioner is a native and citizen of Bangladesh. On or about August 1, 2018, Petitioner arrived in the United States and was encountered by the United States Department of Homeland Security (DHS). (Doc. 1 ¶ 17.) Petitioner was taken into custody and interviewed by Customs and Border Protection, at which time he informed agents that he was 17 years old. (Doc. 1 at 3.) Petitioner was designated as an Unaccompanied Alien Child (UAC) and transferred into the care and custody of the United States Department of Health and Human Services (HHS), Administration for Children and Families, Office of Refugee Resettlement (ORR). (Doc. 1 at 3-4; ¶ 17.)

ORR placed Petitioner in a Southwest Key juvenile residential care facility in Phoenix, Arizona on August 12, 2018. Petitioner's ORR case manager obtained a copy of

his birth certificate, which indicated that Petitioner was 17 years old at the time.

On August 30, 2018, ORR Federal Field Specialist (FFS) Wilfred Calero issued an age redetermination memorandum in which she found that Petitioner was not a minor and requested that he be transferred into the custody of Immigration and Customs Enforcement (ICE). In the memorandum, Calero reported:

> Case manager's initial concern was from client's physical appearance. Dental forensic results concluded that client has an age range between 16.29 and 24.41 years of age with a mean average of 20.35. The statistical probability of the client being over 18 was 87.7%. After speaking to both, client and mother, both insisted that client was 17 and 8 months of age. School document was received and stated that client had completed the "grade eight" which appears to be dated in 2008. The discrepancy on the school document was the day that it was dated. When talking to the mother in regards to the school document the mother was asked if her son graduated high school in 2008 as the document appears to read. The mother answered "yes." When asked how old her son was when he graduated Ms. Begum stated "17." When asked if her son was 17 when he graduated in 2008, Ms. Begum stated "yes." Assistant Lead Case Manager then talked to the mother and stated if her son was 17 when he graduated in 2008, then he is currently 27. Mother did not give a response. When the proposed sponsor was asked if the client was over the age of 18 he stated that he did not know exactly how old the client was and did not want any problems, proposed sponsor withdrew sponsorship.

(Doc. 1-4 at 2.) A "deportation officer" responded to Calero's request for transfer on August 31, 2018, stating that "there was not enough evidence to process [Petitioner] as an adult." (Doc. 1-5 at 2.) Petitioner was then "placed back into the community." (*Id*.)

On October 11, 2018, ICE Officer Christine Hoopes advised ORR that arrangements had been made to transport Petitioner to an adult facility. (Doc. 1-5 at 2.) The same day, Petitioner was taken into ICE custody and detained in the Eloy Detention Center. Petitioner states he was "was seventeen [years] and ten months" old at the time he was transferred into ICE custody. (Doc. 2 at 8.)

Petitioner obtained counsel, and on August 2, 2019, counsel emailed ICE Enforcement and Removal Operations advising that an incorrect age determination had been made and requested that Petitioner be released into the care of a sponsor. (Doc. 1-9

at 2.) Counsel provided copies of Petitioner's birth certificate, consulate verification of the birth certificate, and Petitioner's national identification card from Bangladesh. (*Id.*) ICE Assistant Field Office Director Jason Ciliberti responded by email on August 5, 2019, stating that "ERO will not release [Petitioner] to a sponsor." (Doc. 1-9 at 3.)

Petitioner filed the instant § 2241 Petition and Motion for Temporary Restraining Order on August 9, 2019.

## II. Petition

In the Petition, Petitioner names Eloy Detention Center Warden Fred Figueroa, ICE Phoenix Field Office Director Enrique Lucero, Acting DHS Secretary Kevin McAlleenan, HHS Secretary Alex M. Azar, II, United States Attorney General William Barr, as well as DHS, ICE, HHS, and ORR. He brings five grounds for relief. Petitioner claims: (1) his continued detention in DHS custody pursuant to ORR's age determination violates the Trafficking Victims Protection and Reauthorization Act (TVPRA), 8 U.S.C. § 1232, and its implementing policies; (2) DHS's failure to consider placing him in the least restrictive setting when he reached the age of 18 in accordance with the TVPRA violates the Administrative Procedure Act (APA), 5 U.S.C. § 706; (3) DHS's failure to allow him to participate in "alternative to detention" programs when he reached the age of 18 in accordance with the TVPRA violates the APA; (4) his continued detention arbitrarily deprives him of his liberty in violation of his substantive due process rights under the Fifth Amendment; and (5) his detention without an individuated hearing violates his right to procedural due process under the Fifth Amendment.

In his demand for relief, Petitioner asks the Court to: (1) declare that ORR's age redetermination violated the TVPRA; (2) order ORR to immediately rescind the age redetermination memorandum; (3) enjoin ICE and the Executive Office for Immigration Review from applying the age redetermination in Petitioner's proceedings; (4) order ICE to consider Petitioner for, and place him in, the least restrictive setting available after taking into account whether he is a danger to himself or the community or is a flight risk; and (5) order ICE to allow Petitioner to participate in alternative to detention programs utilizing a

continuum of alternatives based on his need for supervision, including placement with an individual or organizational sponsor, or in a supervised group home.

The Court will require Respondents to answer the Petition.

### III. Motion for Temporary Restraining Order

A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014); *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Where a movant seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is "subject to a higher standard" and is "permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'" *Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).[1]

Unlike a preliminary injunction, *see* Fed. R. Civ. P. 65(a), a temporary restraining order (TRO) may be entered "without written or oral notice to the adverse party." Fed. R. Civ. P. 65(b). A TRO may issue, ex parte, if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant *before* the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b) (emphasis added).

---

[1] "A mandatory injunction orders a responsible party to take action," while "a prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals*, 571 F.3d at 879 (internal quotation marks omitted). "The 'status quo' refers to the legally relevant relationship between the parties before the controversy arose." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1060-61 (9th Cir. 2014).

In his Motion, Petitioner reiterates his request for the relief demanded in his Petition and claims that "if this court does not take immediate action, he will remain at the Eloy Detention Center where his next removal hearing is on October 15, 2019," at which "ICE will be able to use the age redetermination to impeach his credibility, a central factor for his asylum claim." Although his impending asylum hearing provides cause for accelerated consideration, Petitioner has not shown that he will suffer irreparable injury before Respondents can be heard in opposition. He therefore fails to meet his burden to demonstrate that he is entitled to immediate injunctive relief, and his request for a temporary restraining order will be denied. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974) (consistent with the "stringent" restrictions of Fed. R. Civ. P. 65(b), a temporary restraining order may be entered only to execute the "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"). As a matter of discretion, however, the Court will construe Petitioner's request as a motion for preliminary injunction and will set an expedited briefing schedule.

**IT IS ORDERED:**

(1) Petitioner's Motion (Doc. 2) is construed as a Motion for Temporary Restraining Order and Preliminary Injunction and is **denied in part** as to Petitioner's request for a temporary restraining order.

(2) Respondents shall have **21 days** from the date of service to file a Response to Petitioner's Motion for Preliminary Injunction (Doc. 2) in accordance with this Order.

(3) Petitioner shall have **10 days** from the filing of Respondents' Response to the Motion for Preliminary Injunction to file a Reply.

(4) Respondents shall have **21 days** from the date of service to answer the Petition (Doc. 1).

(5) Petitioner shall have **10 days** from the filing of Respondents' Answer to the Petition to file a Reply.

(6) The Clerk of Court shall promptly **serve**: (i) a copy of the Summons, (ii) the

Petition (Doc. 1), (iii) the Motion for Preliminary Injunction (Doc. 2), and (iv) this Order upon the United States Attorney for the District of Arizona by certified mail addressed to the civil process clerk at the office of the United States Attorney pursuant to Rule 4(i)(1)(A) of the Federal Rules of Civil Procedure. The Clerk of Court shall also send by certified mail a copy of the Summons, the Petition, the Motion for Preliminary Injunction, and this Order to the United States Attorney General pursuant to Rule 4(i)(1)(B) and to Respondents pursuant to Rule 4(i)(2) of the Federal Rules of Civil Procedure.

(7) The Clerk of Court shall **email** a copy of this Order to the United States Attorney for the District of Arizona, to the attention of Diana Varela at diana.varela@usdoj.gov.

Dated this 20th day of August, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge